# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| MIKE GARY RHODEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:18-cv-00893-JEO |
| ) | |
| NANCY BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

Plaintiff Mike Gary Rhoden brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying him Supplemental Social Security ("SSI") and Disability Insurance Benefits ("DIB"). (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). (Doc. 10). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

## I. PROCEDURAL HISTORY

Plaintiff filed his applications for SSI and DIB on September 22, 2014, alleging disability beginning June 2, 2006. They were initially denied by an administrative law judge ("ALJ"). (R.10-23).[2] Plaintiff filed a request for review of the ALJ's decision. The Appeals Council ("AC") denied Plaintiff's request for review. (*Id*. at 1-3). The matter is properly before this court.

## II. FACTS

Plaintiff is 50 years old. (*Id*. at 23-24). He alleges that he became disabled as of January 2, 2006, as a result of asthma, chronic back and elbow pain, and chronic pain syndrome. (*Id*. at 13, 148, 153, 266).

Following Plaintiff's administrative hearing, the ALJ found that he had the medically determinable severe impairments of a spine disorder, chronic pain syndrome, and asthma. (*Id*. at 13). He also found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. (*Id*.). He further found that Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of light work with postural, reaching, and environmental limitations. (*Id*. at 14). He determined that Plaintiff

---

[2]References herein to "R. __" are to the administrative record found at documents 7-1 through 7-18 in the court's record. The page number references are to the page numbers in the lower right-hand corner of each page in the record.

could perform his past relevant work as a small parts assembler and that he could perform the requirements of other available work such as a router, order caller, or mail clerk, which were identified by the vocational expert ("VE"). (*Id*. at 21-22). The ALJ concluded that Plaintiff was not disabled. (R. 22-23).

### III. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Mitchell v. Comm'r Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2015); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal

standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). The court must affirm the ALJ's decision if substantial evidence supports it, even if other evidence preponderates against the Commissioner's findings. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990)).

## IV. STATUTORY AND REGULATORY FRAMEWORK

To qualify for benefits a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

Determination of disability under the Social Security Act requires a five step

analysis. 20 C.F.R. §§ 404.1520(b) & 416.920(a)(4). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014).[3] The plaintiff bears the burden of proving that he was disabled within the meaning of the Social Security Act. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also* 20 C.F.R. § 404.704. The applicable "regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Id.*

## V. DISCUSSION

Plaintiff asserts two claims of error: (1) the ALJ failed to consider all of Plaintiff's medically determinable impairments in formulating his RFC and (2) the ALJ failed to specify the weight given to Dr. S. Aggarwal, Plaintiff's treating physician. (Doc. 11 at 3-6). Each will be addressed below.

---

[3] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

### A. Failure to Consider Plaintiff's Right Arm Impairment

#### 1. Context

Plaintiff initially alleges that the ALJ erred in failing to assess all his limitations due to an impaired right elbow. (Doc. 11 at 3). He further argues that the VE was not asked whether a restriction related to an ability to grasp or manipulate small objects would limit or preclude work as a small parts assembler and the other jobs identified by the VE for Plaintiff. (*Id*. at 4). The Commissioner responds that "the ALJ properly assessed Plaintiff's RFC based on testimonial evidence, Plaintiff's course of treatment and objective medical findings, opinion evidence, and Plaintiff's reported activities. (Doc. 15 at 5 (citing R. 14-20)).

Plaintiff injured his right elbow in an automobile collision as a teenager. (R. 72, 86). He lists it as a basis of disability in his initial claims. (*See id*. at 266; 586). According to his hearing testimony, the accident resulted in ligament issues and nerve damage. (*Id*. at 86-87). At times, the impairment causes his hand and fingers to go numb. This prevents him from writing or typing at times. (*Id*.). Plaintiff's first complaint of aching pain in the right elbow was noted in the medical records before the court in April 2008. (*Id*. at 380). It was simply noted on Dr. Aggarwal's initial patient questionnaire. (*Id.*). Plaintiff stated that he had difficulty running, lifting 50 pounds, bending, squatting, stairs, and overhead

work. (*Id.*). He also indicated no difficulty with lifting 25 pounds, vacuuming, groceries, toileting, dressing, grooming, kneeling , driving, uneven ground and getting up from a chair. (*Id.*). During his treatment with Dr. Aggarwal, from April 2008 until May 2012, mainly for back issues (*see id.* at 358-375), Plaintiff reported improvement in his pain situation, saying on October 31, 2012, that he was having "less difficulty" in bending and lifting, and he was pleased with the level his pain control (*see id.* at 15-16, 358).[4]

Plaintiff's subsequent medical records reflect notations about right elbow pain. (*See id.* at 554-55 (Sep. 16, 2014); 558-59 (Aug. 19, 2014); 561-62 (Jul. 22, 2014); 564-65 (Jun. 24, 2014); 569 (May 27, 2014); 572 (May 7, 2014); 575 (Apr. 2, 2014); 578 (Mar. 5, 2014); 581 (Feb. 5, 2014); 584 (Jan. 8, 2014); 859 (Oct. 23, 1015); 861 (Dec. 1, 2015); 863 (Feb. 24, 2016); 865 (Apr. 20, 2016); 867 (Jun. 15, 2016); 869 (July 13, 2016); 872 (Aug. 10, 2016); 875 (Sep. 6, 2016); 878 (Oct. 4, 2016); 881 (Nov. 29, 2016); 884 (Dec. 9, 2014); 886-87 (Nov. 11, 2014); & 889-90 (Oct. 14, 2014)). His pre-medication pain levels were reported as being "8" or "9." (*Id.* at 554, 558, 561, 564, 568, 571, 574, 580, 859, 861, 863, 865, 867, 872, 875, 878, 881, 886 & 889 ). His post-medication levels were reported as being

---

[4] Plaintiff was terminated from Dr. Aggarwal's care in January 2013 for selling his prescription medications. (R. 356-57).

between "5" and "2." (*Id*.).  By 2016, Plaintiff's doctors recommended that Plaintiff "conduct all activities of daily living as normally as possible, walk for exercise as tolerated, [and] exercise as tolerated."  (*See e.g.* R. 879 (Sep. 6, 2016); 879 (Oct. 4. 2016); & 882 (Nov. 29, 2016))).

State agency consultative expert Dr. John Lary examined Plaintiff on November 10, 2014, and noted Plaintiff's complaints concerning handling and carrying some objects and having difficulty washing dishes by hand, loading a dishwasher, and scrubbing pots and pans.  (*Id*. at 600-01).  Plaintiff did report that he "easily" or with only "mild difficulty" unpacked and shelved groceries; swept the floor; changed the bed linens; took the garbage out to the curb; drove; grocery shopped; dressed and undressed, including putting on a shirt, pants, socks and shoes; and bathed.  (*Id*. at 602).  Dr. Lary's physical examination of Plaintiff's extremities was unremarkable.  Plaintiff had good range of motion in his arms; good grip strength in his hands; and no swelling, tenderness, or noted sensitivities in his extremities.  (*Id*. at 593-94).  Dr. Lary concluded that Plaintiff's "ability to sit, stand, walk, lift, carry, bend, squat, and kneel is somewhat impaired by chronic pain complaint[s]."  (*Id*. at 595).  However, he further concluded that his "ability to reach, see, hear, speak, understand, and manipulate small objects is unimpaired.  (*Id.*).

### 2. The Law

A claimant's RFC is the most he can still do despite his limitations and is based on an evaluation of all the relevant evidence. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (a)(3), 416.920(e), 416.945(a)(1), (a)(3); Social Security Ruling (SSR) 96-8p, 1996 WL 374184. The ALJ has the responsibility of assessing Plaintiff's RFC in his decision. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also* §§ 404.1527(d)(2), 416.927(d)(2) (stating that the assessment of a claimant's RFC is an issue reserved for the Commissioner); SSR 96-5p, 1996 WL 374183.

### 3. Analysis

The issue before the court is whether substantial evidence supports the determination of the ALJ concerning Plaintiff's RFC. The court finds that there is.

Plaintiff did allege he experiences elbow problems during the administrative process. His medical records support that he complained about the same to medical providers during 2016. However, it is equally clear from the decision of the ALJ that he considered all the medical evidence and Plaintiff's testimony in determining his RFC. His conclusion that Plaintiff's complaints of disabling symptoms were not entirely consistent with the medical and other evidence is supported by substantial evidence.

First, as noted above, Plaintiff's treatment with Dr. Aggarwal from April 2008 until May 2012 resulted in improvement in his pain symptoms, less difficulty in functioning, and greater satisfaction with his level of relief. (*See e.g.* R. 358). Plaintiff reported improvement in his pain situation, saying on October 31, 2012, that he was having "less difficulty" in bending and lifting, and he was pleased with the level his pain control. (*See id*. at 15-16, 358).

Second, Plaintiff's subsequent medical records reflect that he obtained and reported good results from his pain treatment with North Alabama Pain Services. Additionally, his clinical examinations do not reveal muscle issues, motor loss, or atrophy. (*See e.g.* 574, 577, 580, 583, 859, 861, 863, 865, 867, 869, 872, 875, 878 & 881). Plaintiff typically was instructed by medical staff during his visits to conduct all daily living activities "as normally as possible." (*Id*. at 849, 851, 853, 855, 858, 860, 862, 864, 866, 868, 870, 873, 876, 879, 882). By November 2016, Plaintiff rated his post-medication pain as "2" on a 10-point scale. (*Id*. at 881).

Third, Plaintiff's activities do not support additional limitations related to Plaintiff's right elbow. To the contrary, they provide substantial evidence to support the ALJ's RFC finding. By way of example, in October 2014, Plaintiff reported that he could attend to his personal care, do his own laundry, complete small household repairs, vacuum, shop in stores, and drive. (*Id*. at 277-79). In

10

November 2014, he told medical consultant Dr. Lary, that he could "easily" or had only "mild difficulty" unpacking and shelving groceries, sweeping, changing bed linens, taking the garbage out, driving, grocery shopping, dressing himself, and bathing. (*Id*. at 601-02).

In sum, the court finds that there is substantial evidence in the record to support the ALJ's decision concerning Plaintiff's RFC. Plaintiff's alleged right elbow impairment and any resulting limitations are sufficiently accounted for via the RFC. The court further finds that even if the ALJ did not specifically and adequately address Plaintiff's right elbow limitations, any purported failure to evaluate this matter is harmless and not a cause for reversal or remand for the reasons just stated. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (holding that the complained-of error was harmless because it did not have an impact on the step being challenged); *Reeves v. Heckler*, 734 F.2d 519, 524 (11th Cir.1984) (rejecting a challenge to an ALJ's conclusion as harmless error when the ALJ had considered the relevant evidence in making the disability determination); *Hunter v.Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) ("To the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination.").

### B. Failure to Specify the Weight Given to Dr. Aggarwal

Plaintiff next argues that the ALJ erred by not specifying the weight he assigned to Dr. Aggarwal's opinions. (Doc. 11 at 4). He also asserts that the ALJ erred in not evaluating that opinion in light of the relevant regulatory factors specified in 20 C.F.R. § 404.1527.[5] He asks that the matter be remanded for further consideration by the ALJ. The Commissioner responds that the ALJ did not reversibly err in failing to assign weight to Dr. Aggarwal's treatment records. (Doc. 15 at 8-10). The court agrees with the Commissioner and finds that Plaintiff is not entitled to any relief.

Dr. Aggarwal treated Plaintiff from April 2008 through October 2012, principally for back pain. (*See* R.358-375). Plaintiff was diagnosed with Chronic Pain Syndrome. (*Id*. at 358-68). In August 2011 and March 2012, Dr. Aggarwal noted that Plaintiff's range of motion in the lumbar spine is limited by 25%. (*Id*. at 360, 362). Plaintiff later reported improvement in his pain situation, saying on October 31, 2012, that he was having "less difficulty" in bending and lifting and he was pleased with the level his pain control. (*See id*. at 15-16, 358).

---

[5] Section 404.1527(c) discusses the weighing of medical opinions, including (1) the examining relationship, (2) the treatment relationship (length, nature and extent thereof), (3) the supportability of the opinion rendered, (4) consistency of the opinion, (5) the specialization of the medical provider with regard to the nature of the opinion, and (6) other relevant factors. 20 C.F.R. § 404.1527(c)(1)-(6).

After being discharged by Dr. Aggarwal, Plaintiff saw Dr. Mark Murphy at North Alabama Pain Services. His records reveal the following concerning Plaintiff's pain:

> [Plainitff] was generally seen for scheduled monthly follow-up visits for routine refills of the same medications including Methadone, Norco, and Gabapentin. [Plaintiff] reported good control of his pain with treatment and medication. For example, office visit notes on April 2, 2014, June 24, 2014, and December 9, 2014 show [Plaintiff] rated his pain as an overall three or five, on a verbal pain scale of ten, with his medication. Examinations also revealed [he] had subjective complaints of tenderness; yet, there w[ere] no abnormal clinical objective findings including sensory loss, muscle spasms causing straightening, curve or spondylosis, motor loss, or atrophy. [He] continued to have good control even after his Norco was discontinued on March 3, 2015 and the dosage of his Methadone was increased. [He] reported some increase of pain with standing and walking; yet, on January 6, 2015, April 28, 2015, September 1, 2015, and April 20, 2016, Dr. Murphy instructed the claimant to "conduct all activities of daily living as normally as possible." Office visit notes on November 29, 2016 further continue to show [he] rated his pain as only a two with his medication. Diagnoses by Dr. Murphy included chronic pain syndrome, anomalies of the spine, not elsewhere classified, and lumbago….

(*Id.* at 16 (citation omitted)).

When weighing a medical opinion,[6] an ALJ must consider the medical source's treatment or examining relationship with the claimant, evidence

---

[6] A medical opinion is a statement from an acceptable medical source that reflects a judgment about the nature and severity of a claimant's impairments, including his symptoms, diagnosis and prognosis, what he can still do despite the impairments, and his physical or mental restrictions. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

supporting the opinion, the consistency of the opinion with the record as a whole, the specialization of the medical provider, and other relevant factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); SSR 96-2p, 1996 WL 374188. A treating source opinion is entitled to great or controlling weight when it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence of record. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p at *4; *Edwards v. Sullivan*, 937 F.2d 580, 582 (11th Cir. 1997).

Plaintiff is not entitled to any relief on this claim for a number of reasons. First, while the ALJ did not conduct the typical analysis seen by this court, the record demonstrates that the ALJ recognized the fact that Dr. Aggarwal's records show a chronic pain syndrome diagnosis during 2008-2012 with a 25% limitation on his range of motion during late 2011 and early 2012. The ALJ specifically found that chronic pain syndrome is one of the severe impairments Plaintiff experiences. (*See* R. 13). However, the mere existence of the impairment does not demonstrate the extent that it limits Plaintiff's ability to work. *See Moore v. Barnhart*, 405 F.3d 1208, 1213, n.6 (11th Cir. 2005) (stating "the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard"). The ALJ specifically

considered and discussed Plaintiff's chronic pain syndrome, as well as his associated symptoms and limitations. (*See* R. 15-16).

Second, Plaintiff has failed to establish that his chronic pain caused greater limitations than those the ALJ allowed for in his RFC finding. (R. 14). To the contrary, Plaintiff's treatment records with Dr. Aggarwal and Dr. Murphy, that were previously discussed, fail to show that his chronic pain causes greater limitations than the ALJ determined and articulated. Additionally, Plaintiff has failed to allege, much less demonstrate, how Dr. Aggarwal's findings contradict the ALJ's determinations. Accordingly, the court finds any error is harmless and Plaintiff is entitled to no relief. *See Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987 (11th Cir. 2015) (the ALJ's failure to explicitly state the weight given to a treating source was harmless because nothing in the record was inconsistent with the ALJ's decision); *Lewen v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 968 (11th Cir. 2015) (claim that ALJ did not consider the medical opinions is without merit where RFC finding was consistent with and fully accounted for the opinions); *Newberry v. Comm'r of Soc. Sec.*, 572 F. App'x 671, 671-72 (11th Cir. 2014) (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," *Dyer v. Barnhard*, 395 F.3d 1206, 1211 (11th Cir. 2005), and even if the ALJ erroneously failed to explicitly assign weight to

and discuss every aspect of [the treating physician's] opinion, this error was harmless because it is still clear that the ALJ's rejection of the portions of [his] opinion that are inconsistent with the ALJ's ultimate conclusion was based on substantial evidence, *see Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983) (classifying certain errors as harmless in the context of the substantial-evidence standard)."); *Shaw v. Astrue*, 392 F. App'x 684, 686, n. 1(11th Cir. 2010) (noting that "even if the ALJ erred in failing to mention every finding made by [an examining physician], any such error was harmless").

## VI. CONCLUSION

For the reasons set forth above, the undersigned concludes that the decision of the Commissioner is due to be affirmed. An appropriate order will be entered separately.

**DONE,** this the 20th day of June, 2019.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge